HENRY B. HUNTINGTON AND OTHERS' APPEAL FROM PROBATE.

A testator gave a fund to *Z* in trust, the income to be paid to the testator's widow during her life, and on her decease the whole fund to go to *Z*, if he should survive the widow, and if he should not to such persons as *Z* by his last will should

Huntington's Appeal from Probate.

appoint. *Z* did not survive the widow and died making no appointment, and the fund remained, after the death of the widow, as intestate estate. Whether the representatives of the widow were entitled to the share of the fund which the widow by statute takes in intestate estate: *Quere.*

The will by its terms clearly indicated an intention to exclude the widow from any further participation in the fund than as legatee of the income of it during her life. Whether, in distributing the fund as intestate estate, the provisions of the will could be considered: *Quere.*

In this case the widow in her life time had entered into an indenture with *Z* and *S*, by which it was agreed that the trust should be transferred to and accepted by *S*, (the will authorizing such transfer,) and that in case *Z* should die without making an appointment the fund should go to his heirs at law, who were also the sole heirs at law of the testator. Held that, whatever might otherwise have been the rights of the representatives of the widow, she had here made a valid relinquishment of the interest in question to the heirs of *Z*, and that her representatives could take nothing.

· APPEAL from a decree of the court of probate for the district of Norwich, ordering a distribution of certain intestate estate of Jabez W. Huntington.

Jabez W. Huntington died on the 2d day of November, 1847, leaving a will, by which he gave to his executor, Zachariah Huntington, the sum of $17,000 in trust, to be invested in his own name or in that of some other person to whom he should transfer the trust, and the income to be paid to his widow, Sally Ann Huntington, during her life, and on her death the principal to become the property of the said Zachariah, who was his father, in case he should survive the widow, and if he should not then to be paid over to such person or persons as the said Zachariah by his will should appoint. The parts of the will relating to this bequest are given in full in the report of the case of *Johnson* v. *Stanton*, ante, page 298. Zachariah died on the 23d day of June, 1850, before the death of the widow, and without making any appointment, and this court, in the case referred to, held the fund to be intestate estate, and it was afterwards administered upon as such. The widow died on the 26th day of June, 1861.

The court of probate ordered a distribution of this estate, one-half to the administratrix of the estate of Sally Ann Huntington, the widow of Jabez W., and the other half to the heirs at law of Jabez W., who were also the sole heirs at law of

Zachariah Huntington, the former having died without children. From this decree the heirs appealed, on the ground that the representatives of the widow were not entitled to any share of the fund, although it was intestate estate, by reason of the provision of the will that she should have the income of the fund during her life, and the intention manifested by the will to exclude her from any participation in the principal.

On the 25th day of May, 1848, Zachariah Huntington, Sally Ann Huntington the widow, and Henry Strong Esq., of Norwich, executed an indenture, by which the trust and the trust estate were transferred, under authority given by the will, from the said Zachariah to the said Strong, and accepted by the latter. Mr. Strong held the trust until his death in November, 1852, after which, by a like indenture, executed by his administratrix, by the said Sally Ann, and by Frank Johnson, the trust was transferred to and accepted by the said Johnson, who held the same until after the death of the widow, and until, under the advice of this court in the case before referred to, the fund was paid over to Lewis E. Stanton Esq., administrator of the intestate estate of Jabez W. Huntington.

It was claimed by the appellants that the representatives of the widow were not entitled to a share of the intestate estate for the further reason that, by the indenture of May 8, 1848, above referred to, she had released all her interest, if she had any, in the principal of the fund, and had agreed that the whole fund should go after her death to the appellants, the heirs of Zachariah Huntington, in case he should not survive her and should make no appointment by his will. The material parts of that indenture were as follows :—

"This indenture, made and executed this 25th day of May, 1848, by and between Zachariah Huntington, of the first part, Sally Ann Huntington of the second part, and Henry Strong of the third part, all of Norwich in the state of Connecticut, witnesseth, that whereas Jabez W. Huntington, late of said Norwich, deceased, did, by his last will and testament, (of

which the said Zachariah is executor) devise, order and direct in manner following, to wit : [Here reciting the clause of the will pertaining to the trust and the trust fund;] and said Zachariah Huntington, having invested said sum of $17,000 in manner following, to wit: *   *   *   *; And the said Zachariah being desirous to be relieved from the duties of said trust, and having appointed the said Henry Strong to be trustee under said will in his place and with his power and authority as such trustee, and said Strong having consented and agreed to accept and execute said trust, as is hereinafter provided : Now therefore, in consideration of the premises the said Zachariah, with the assent and approbation of said Sally Ann, has transferred, assigned and conveyed, and by these presents doth assign, transfer and convey the said trust fund to him the said Strong, as such trustee, to be by him had, held, used and disposed of in manner following, to wit :— Said trustee shall from time to time during the life of said Sally Ann, pay to her the dividends, interest, profits and income of the said trust fund as the same shall be by him received ; and upon the decease of the said Sally Ann, the said fund in said trustee's hands, as the same shall ᵢbe then invested, shall be by him transferred and delivered to said Zachariah, if in life, or in case of his decease then to such person or persons as may be entitled to have and receive the same under the last will and testament of said Zachariah, or to his heirs at law in case he shall not by his said will otherwise provide. And said Strong. on his part hereby agrees to accept and execute said trust, and to pay over the income of said trust fund, and to pay and transfer the principal of said fund according to the requirements of the will of said deceased, as the same may be invested at the time of such payment and transfer, first deducting his necessary and proper charges in the execution of said trust ; it being however understood and hereby provided, that said trustee is not to be personally liable for any depreciation or loss of any part of said trust fund, or of the income of the same, excepting only as the same shall be occasioned by his willful negligence or default in the execution of said trust. In witness whereof the said parties have

hereunto set their hands and seals, the day and year first above
written.                    ZACHARIAH HUNTINGTON. [L. S.]
                           SALLY ANN HUNTINGTON. [L. S.]
                           HENRY STRONG.         [L. S.]"

On these facts the case was reserved for the advice of this
court.

*Hovey* and *Halsey*, with whom were *Wait* and *Young*, for
the appellants.

1. By the indenture Sally Ann Huntington released to the
heirs of Zachariah all her interest in the fund. If, as is
claimed, her interest in it as intestate estate relates back to
the death of her husband, she of course had a right to release
her interest. If it did not, the instrument would operate as
an estoppel upon her and upon all those claiming under her.
*Stowe* v. *Wyse*, 7 Conn., 214. 2 Smith Lead. Cas., 4th Am.
Ed., 556.

2. But independently of this indenture the representatives
of the widow are not entitled to any share of the fund. The
will in giving the widow the use of the fund for her life and
in providing for its disposition after her death, clearly indicates
the intention of the testator to give her no interest in the fund
beyond the income, and no interest beyond her life. But it
is claimed that, as this is intestate estate, and the statute pre-
scribes the manner of distributing such estate, the distribution
can not be affected by the will, and that the will can not be
considered at all in determining the rights of the distributees.
But the statute was intended merely to provide for a distribu-
tion where the intestate has failed to express his will with
regard to the disposition of his property, and if, in a will relat-
ing to the same property, but in which he has failed to make
a complete disposition of it, he has clearly indicated his will
with regard to it in some respects, there is no reason why his
will so manifested should not be respected. The case should
be treated as if the testator had in terms given the principal of
the fund, as the statute gives it in the absence of a will, to
his "next of kin," or had directed that it should go "accord-
ing to the statute of distributions." There have been numer-

ous cases where wills have contained such a provision, and in all such cases it is held that the estate is not necessarily to be distributed among all the next of kin as if it was intestate estate, but that the other parts of the will may be considered for the purpose of limiting the application of the terms. *Briden* v. *Hewlett*, 2 Mylne & Keen, 90. *Butler* v. *Bushnell*, 3 id., 232. *Bird* v. *Wood*, 2 Sim. & Stu., 400. *Jones* v. *Colbech*, 8 Ves., 38. *Miller* v. *Eaton*, Cooper, 272. If the will in this case had so given the principal of this fund, there could not be a doubt that the testator intended to exclude from the distributees the widow, for whom he had made a special provision out of the income of the fund for her life, and this intent would have been carried out by the court in determining upon the construction of the will.

*Stanton*, for the appellees.

1. The indenture is not a release of the interest of the widow. Its provisions, so far as they relate to the final disposition of the property, are void. They undertake to authorize the trustee to pay over the fund in a certain event to the heirs of Zachariah Huntington. This court has decided that in that event it is to go to the administrator of Jabez W. Huntington. *Johnson* v. *Stanton*, 30 Conn., 297. The words profess to be a declaration of trust and nothing more. They are void for all purposes. *Adey* v. *Arnold*, 15 Eng. Law & Eq., 268. Besides, the whole object of the indenture was to provide for the transfer of the trust to Mr. Strong, and all the other provisions of the instrument were merely incidental to this object. And there is no estoppel by the indenture. It does not appear that Zachariah forbore to exercise his power of appointment by reason of it. The consideration is stated, which excludes the idea of the forbearing to appoint being a consideration. The widow gained nothing by the indenture. Estoppel by deed must be " precise, clear and unequivocal, not depending upon doubtful inference." *Rich* v. *Atwater*, 16 Conn., 409.

2. The fund in question, as intestate estate, can be distributed only according to the statute of distributions. And

that statute gives the widow a moiety of the personal estate, where, as here, there are no children. Rev. Stat., tit. 14, sec. 49. The heirs of the intestate are to be ascertained by reference to the time of his death. The legal title of the administrator, though subsequently acquired, yet relates back to the death, and the equitable right of the distributees vested at that time. Hence the right to one moiety of this intestate property was vested in the widow and descends to her heirs. *Griswold* v. *Penniman*, 2 Conn., 564. *Kingsbury* v. *Scovill*, 26 id., 349. *Holcomb* v. *Sherwood*, 29 id., 418. *Foster* v. *Fifield*, 20 Pick., 67. *Hayward* v. *Hayward*, 20 id., 517. Nothing contained in the will can prevent this distribution. The testator died wholly intestate as to this residue and the will can not control it. *Brown* v. *Lawrence*, 3 Cush., 390. Property can not be testate estate for a time and then become intestate estate. Intestacy relates to the death. The fact that the legal title was for a time in trustees makes no difference ; nor does the contingent interest given to Zachariah Huntington ; nor the life estate given to the widow. *Childs* v. *Russell*, 11 Met., 16. *Hayward* v. *Hayward*, supra. *Brown* v. *Lawrence*, supra. *Doe* v. *Lawson*, 3 East, 278. *Holloway* v. *Holloway*, 5 Ves., 399. *Pickering* v. *Ld. Stamford*, 3 Ves., 332, 492. *Simpson* v. *Hutton*, 11 Viner Ab., 185. 2 Eq. Cas. Ab., 439.

HINMAN, C. J. The appellants are the heirs at law of Jabez W. Huntington, and they also are the only heirs of his late father Zachariah Huntington. The appellees are the heirs of Mrs. Sally Ann Huntington, the widow of Jabez W. Jabez W. Huntington provided in his will that the sum of seventeen thousand dollars should be invested by his executor, Zachariah Huntington, and the income thereof paid over to his widow during her life, and that upon her decease the principal should become the property of his father, if then alive, but if he should be dead at the decease of his widow, then that it should be paid over to such persons as the said Zachariah by his last will and testament might designate and appoint. Zachariah Huntington having died during the life of the tes-

tator's widow, without having executed the power of appointment, and the widow having also died, the principal of this fund remains for distribution as intestate estate of Jabez W. Huntington, and the question is, whether the late widow, or her representatives, are entitled to a share of it in the same manner that they would have been had Jabez W. Huntington died without making any will, and had no agreement or arrangement been made in respect to it by the parties in interest since his decease. This question, if it rested entirely upon the question whether the will could in any manner affect the distribution of this fund as intestate estate, which it has become by the failure of Zachariah to take it by reason of his death before the decease of the widow, and his failure to make any appointment under the will would undoubtedly be one of some interest. If we can look at the will to aid us in determining with regard to the distribution, it seems very clear that the testator did not intend in any event that his widow should take any portion of the principal of this fund. He gave her the whole income from it during her life; and to this end he provided for a trustee to hold the fund until the event of her decease, at which time it was to go to his father, if alive, but if dead to his father's appointee. The widow, therefore, during her life, never could have taken as a distributee, nor as the appointee of her father in-law, and it is hardly credible that the testator should have intended, or even anticipated the possibility, that her representatives should take any portion of this principal to the exclusion of his own right heirs.

But we have not deemed it necessary to determine this question, and do not intend to discuss or determine it, because we are satisfied that if Mrs. Huntington ever had any interest in a portion of this fund she released it by the indenture of the 25th of May, 1848. It was claimed that the sole purpose of this indenture was to change the trustee. We do not so consider it. Had that been the only object the parties never would have entered into the covenants they did in respect to the disposition to be made of the fund after the decease of Mr. Huntington. All that was necessary for them to do to execute such a purpose was for Mr. Huntington to surrender or

give up the trust to Mr. Strong, and for Mr. Strong to accept it. Mr. Huntington alone, by the will, was to designate the person who was to take this fund, if he did not invest it in his own name. Why then was Mrs. Huntington a party to the instrument, unless there was something for her to do or to relinquish. The language of this indenture is very explicit in respect to the disposition of the fund after the death of the widow. It was to be " transferred and delivered to said Zachariah if in life, or in case of his decease then to such per. son or persons as may be entitled to have and receive the same under the last will and testament of said Zachariah, *or to his heirs at law in case he shall .not by his will otherwise provide.*" Now it may well be that had the heirs at law of Zachariah been different persons from the heirs of his son, Jabez W., this provision as against the latter would have been of no force whatever, since the power of appointment could only be executed by the will of Zachariah. The parties understood this, for they provide that it shall be transferred and delivered to him if alive, or to such person or persons as may be entitled to it under his will, that is, in other words, to his appointees by will, or to his heirs at law in case of his making no appointment. Surely it was competent for the widow to release to the persons who were entitled to a portion of this fund that portion to which she might otherwise be entitled, and we think she did so release it by this instrument to the heirs at law of Zachariah, on his death without making any appointment by will; and they being the same persons who were entitled to take a portion of the fund, as the next of kin of Jabez W., are entitled to hold under this instrument the remaining portion as against the widow or her next of kin. Mrs. Huntington knew that Zachariah by virtue of his power of appointment could dispose of this fund as he pleased in case of his not surviving her, and in order to secure it to the next of kin of her deceased husband she might well be willing to provide in this mode against his making any appointment prejudicial to their interests, presuming that they would be, as we find now is the case, the same persons who are the heirs at law of Zachariah.

It was understood on the argument that the object of the parties was the settlement of their rights to this fund, and therefore that any technical objection to a reversal of the decree of probate arising from the circumstance that Mrs. Huntington's interest in it might be held to have been released or assigned was waived. We therefore advise the superior court to reverse the decree of probate appealed from.

In this opinion the other judges concurred.